**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| ELLA M. MOORE<br>Plaintiff | |
| v. | **Civil Action No.:** |
| GEORGIA DEPARTMENT OF CORRECTIONS<br>Defendant | **Jury Trial Demanded** |

**COMPLAINT**

This action is brought by Plaintiff Ella M. Moore, a current employee of the Georgia Department of Corrections, (hereinafter "DOC" or "the DOC"), pursuant to Title VII, of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1983 for violations resulting from a hostile work environment based up Plaintiff's gender – female and for retaliation in complaining about a hostile work environment to which Plaintiff was subject to and intentional infliction of emotional distress under Georgia law.

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction of the federal claims asserted in this action under 28 U.S.C. §§1331, 1332, 1337, 1338, 1343(a) (4) 1367.
2. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), as defendants reside and conduct business in this District and as a substantial part of the events or omissions giving rise to the claims occurred in this District.
3. Plaintiff asserts state based claims under the supplemental jurisdiction of this court, pursuant to 28 U.S.C. § 1367, to hear and decide claims arising under the laws of the State of Georgia. Jurisdiction is specifically conferred on the Court by 42 U.S.C. 20003-5(g).

## II. STATEMENT OF CLAIMS

**4.** The instant lawsuit is for declaratory relief for unlawful discrimination, and retaliation based on gender in the terms and conditions of employment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq, as amended by the Civil Rights Act of 1991, as amended, 42 U.S.C. 2000e, et seq. ("Title VII"), for vicarious liability, attorney's fees, compensatory damages, and punitive damages.

**5.** Plaintiff received her right to sue letter and this action is timely filed within 90 days.

## III. PARTIES

**6.** Plaintiff Ella M. Moore (hereinafter "Plaintiff" or "Moore") is a resident of Pembroke, Bryan County, GA. Plaintiff is a black female who is employed by Defendant Georgia Department of Corrections as a Corrections Officer. Her primary assignment was in the Smith Transitional Center in Glennville, Georgia, which is over seen by the Georgia Department of Corrections.

**7.** Defendant Georgia Department of Corrections at all times relevant to this lawsuit is a government entity that manages employees, such as Plaintiff and provides funds for the operation of the Georgia Department of Corrections. As such, Defendant Georgia Department of Corrections is subject the jurisdiction of this Court. Defendant Georgia Department of Corrections may be served process by serving its registered agent Robert F. Jones, General Counsel, Georgia Department of Corrections, 300 Patrol Rd., PO Box, 1529, Forsyth, GA 31029.

**8.** The Defendant Georgia Department of Corrections is an employer as defined by 42 U.S.C. §2000e (b). Defendant is subject to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C §§ 2000e, et seq., as amended by the Civil Rights Act of 1991, and the laws of the state of Georgia.

**9.** Plaintiff Ella Moore was, at all times relevant to this action, an "employee" of the Defendant Georgia Department of Corrections, as defined at 42 U.S.C § 2000e (f), and is entitled to the protections provided their under.

## IV. GENERAL ALLEGATIONS

**10.** Plaintiff began her employment with the DOC in 2000. She began at the Rogers State Prison, then the Savannah Men's Transitional Center in 2002, then transferred to Smith Transitional Center in 2006.

**11.** On May 24, 20011, Plaintiff was at a meeting with her supervisor Assistant Superintendent Greg Stewart (hereinafter "Stewart"), co-worker corrections officer David Durrence (hereinafter "Durrence") and an inmate.

**12.** The meeting was to address certain magazines the inmate received in the mail. Since Plaintiff was in charge of the mailroom at the time, her presence at the meeting was requested by Stewart.

**13.** Stewart instructed the inmate that he could not have the magazines because they contained violent content, which were against the policy of Smith Transitional Center.

**14.** Stewart then made an inquiry to the inmate as to what caused his conviction. The inmate replied that it involved a woman. At that time Stewart replied "women should be barefoot, naked and in the kitchen."

**15.** Upon hearing the comment, Plaintiff walked out of the Stewart's Office and heard Stewart laugh. She did not hear the others react. Plaintiff felt belittled by Stewart. She also felt that the comments, along with being inappropriate, weakened her authority as a correction officer given the fact that she dealt with inmates on a regular basis.

**16.** Several days later she filed a complaint for sexual harassment to the DOC and Smith Transitional Center.

**17.** Plaintiff has known Stewart for several years and was familiar with his prior derogatory comments about women. He has said the following comments around her during her employment, "women don't belong there [in Smith Transitional Center]" and a comment about the Monica Lewinsky/Bill Clinton scandal, "that's a woman for you." Those type of comments made her feel as though he did not respect her feelings and opinions because she is a woman.

**18.** Prior to Stewart being her supervisor, Lt. Curtis Rawls (hereinafter "Rawls") supervised her. During her service with Rawls Plaintiff had few, if no issues regarding her doing her job.

**19.** Rawls retired May 12, 2011 and then Stewart became her supervisor, until that time she did not receive any complaints about her work performance. All the work related issues began with Stewart. Further, she felt Stewart picked favorites and was she was not one of them

**20.** On June 3, 2011, Plaintiff was subject to belittling and disrespectful behavior by Stewart when she was called to his office for a meeting with Stewart and Lt. Gregory Porter (hereinafter "Porter").

**21.** At this meeting Plaintiff was ordered to sit down in a chair, she however desired not to sit and wanted to be addressed while standing. She was then berated by Stewart regarding her inappropriate handling of a phone call, which she contends was a call that she did not need to respond to because it was not part of her duties. During the whole meeting Stewart was a talking to her sarcastically and in a demeaning way.

**22.** Later that day Stewart told Plaintiff that she was isolating herself from the staff and she needed to leave the mailroom door open when she was working, The mailroom at Smith Transitional Center is a restricted area and under Standard Operating Procedures ("SOPs") the door must be closed at all times. And Plaintiff knew that was the rule and followed it and felt that Stewart telling her to break the rules was an attempt to get her in trouble at work.

**23.** On June 6, 2011, Plaintiff was reassigned from the Mailroom/Property Officer to the Laundry/Sanitation Officer. This was done even though there were no issues with her prior assignment.

**24.** While serving in her new assignment, Plaintiff was not given enough time to learn proper SOPs for her new position. Further, she was also accused of removing sanitary materials from the barber shop, when she in actuality did not.

**25.** On June 10, 2011, Plaintiff met with Superintendent Cliff Kennedy (hereinafter "Kennedy") and Warden Stanley Williams (hereinafter "Williams or "Warden Williams") at the Claxton Women's

Probation Detention Center (hereinafter “CWPDC”). At the meeting, they discussed the sexual harassment allegation against Stewart and his condescending behavior towards Plaintiff.

**26.** Warden Williams responded to Plaintiff that the statement by Stewart regarding women being barefoot in the kitchen was no big deal. Further, upon her inquiry into Stewart’s behavior towards Plaintiff Warden Williams stated that he is her supervisor; he tells her to do something she needs to do it.

**27.** After the meeting with the Warden Williams and Kennedy she felt like nothing was going to be done about her issues with Stewart.

**28.** On June 26, 2011, Plaintiff was reassigned to CWPDC and was to report the next day. Though she kept the same shift and hours this was an unfavorable transfer done due to her complaint against Stewart for she had done nothing wrong at Smith Transitional Center.

**29.** On July 27, 2011, Plaintiff’s duties were changed and she was made the backup officer for the property room. This change was made because she allegedly did not know proper instructions for mailing property. This information was withheld by Corrections Office Ballard (hereinafter “Ballard”) and never shared after Plaintiff informed superiors.

**30.** On July 29, 2011, Plaintiff was accused of leaving a mailroom radio in a vehicle, which she did not do. This was a false allegation that she was given corrective action in the form of a letter of instruction.

**31.** Also on July 29, 2011, Plaintiff was given another letter of instruction for she inquired about the proper procedure for the mailroom. Upon her inquiry, Lt. Gregory Porter (hereinafter “Porter”) told her she acted like she did not have clue about what’s going on [in the mailroom] and she asks the same questions….like she is not competent. This also arose from an indecent regarding Ballard dealing with packages outside of designated procedures. When Plaintiff asked about this she was given corrective action and nothing happened to Ballard.

**32.** On August 2, 2011, it was alleged that Plaintiff failed to consult the accounting department regarding shipment of certain packages. She was accused of shipping packages before inquiring

if funds were available to do so. However, Plaintiff was shipping packages at the direction of her supervisor and never had to inquire as to the amount of shipping before. Plaintiff was given corrective action by a letter of instruction.

**33.** On August 2, 2011, Plaintiff was involved a discrepancy in mailroom procedures with Ballard, who became combative and argumentative Ballard was instructed to write a statement and Lt. Porter wrote a statement, however, his statement was solely based on what Ballard wrote and was used against Plaintiff and was noted in corrective action against Plaintiff.

**34.** On August 16, 2011, Plaintiff's issues with Ballard continued when Ballard purposely threw her shoulder into Plaintiff while they were both walking in the hall at work. This incident was reported to Plaintiff's supervisor, Kennedy and the complaint was never addressed or resolved. Plaintiff was given another letter of instruction due to this incident.

**35.** On September 14, 2013, Plaintiff was required by Porter to give a statement as to why she failed to process the property of a resident who transferred the day before. However, Porter knew that it was impossible for Plaintiff to pull said property because she was denied access to the keys to that property.

**36.** On November 29, 2011, Plaintiff was approached regarding the fact that the mailroom door was left "cracked open" after she left for the day. She was accused of leaving the door open and that it was a security breach. She informed her supervisors that she closed the door behind when she left. She was subject to corrective action for this incident.

**37.** Prior to Plaintiff's initial complaint of sexual harassment her schedule was flexible and based on the schedule of the residents at Smith Transitional Center. After the incident, Plaintiff's superior's changed her work schedule and made it less flexible.

**38.** Since the incident relating to the sexual harassment comments Plaintiff was retaliated against and was forced to work in a hostile work environment.

**39.** Plaintiff was transferred to Smith State Prison in 2012.

**40.** She has been on medical leave since May 2012, but is still an employee of the DOC.

## V. CAUSES OF ACTION

### COUNT ONE

### VIOLATIONS OF PLATIFF'S CIVIL RIGHTS UNDER TITLE VII GENDER DISCRIMINATION

**41.** Plaintiff repeats, re-alleges and reiterates the foregoing allegations set forth in paragraphs 1-40 as set forth herein.

**42.** Plaintiff has suffered and in the future will suffer actual damages in the form of mental anguish, emotional distress and humiliation as a result of Defendant's discriminatory and retaliatory employment practices. Defendant has subjected Plaintiff to discrimination based up on her gender female and retaliation for engaging in protected activity, which was unwelcome offensive, severe, persistent, abusive, malicious, intentional and otherwise wrongful in violation of Title VII.

**43.** Defendant intentionally discriminated against Plaintiff because of her gender female and because she engaged in protected activity in violation of Title VII.

### COUNT TWO

### RETALIATION IN VIOLATION OF UNDER TITLE VII GENDER

**44.** Plaintiff repeats, re-alleges and reiterates the foregoing allegations set forth in paragraphs 1-43, as set forth herein.

**45.** The acts and omissions described above demonstrate that Defendant has retaliated against Plaintiff, who is a public employee, for disclosing and reporting violations or noncompliance with a law, rule or regulation which include but not limited to proper procedures regarding operations of mail, property and sanitation in select agencies overseen by the DOC. *See* 42 U.S.C § 2000e-2.

**46.** Defendant does not have immunity for its actions and omissions.

**47.** As a direct and proximate result of the acts and omissions of Defendant as set forth above, Plaintiff has suffered lost wages and benefits. Further, Plaintiff has incurred attorney's fees and court costs.

**COUNT THREE**

**ATTORNEY FEES**

**48.** Plaintiff repeats, re-alleges and reiterates the foregoing allegations set forth in paragraphs 1-47, as set forth herein and states:

**49.** Plaintiff seeks an award of attorney's fees in this action.

**50.** Defendant has been unnecessarily contentious, and has caused Plaintiff additional attorney's fees. Plaintiff is therefore entitled to recover from Defendant the expenses of this litigation, including but not limited to reasonable attorney's fees and costs pursuant to 42 U.S.C § 1988(b).

**COUNY FOUR**

**PUNITIVE DAMAGES**

**51.** Plaintiff repeats, re-alleges and reiterates the foregoing allegations set forth in paragraphs 1-50, as set forth herein and states:

**52.** Defendant showed willful misconduct, malice, wantonness, oppression, or that want of care which would raise the presumption of conscious indifference to consequences.

**53.** Plaintiff is entitled to an award of punitive damages in amount to be determined in the enlightened conscience of a fair and impartial jury, not as compensation to Plaintiff, but solely to punish, penalize or defer Defendant from such wrongful conduct in the future.

**DEMAND FOR RELIEF**

**54.** Wherefore, Plaintiff prays the process issue according to law and demands judgment against Defendant as follows:

**a.** All damages that maybe awarded under Title VII, and Georgia law; general compensatory damages including but not limited to damages for mental and emotional distress plus interest;

**b.** Special damages;

**c.** Punitive damages:

**d.** Injunctive relief preventing and prohibiting Defendant from engaging in its present practices in violation of the laws cited herein;

**e.** Reasonable attorney's fees and expenses and costs pursuant to 42 U.S.C. § 1988; and

**f.** Such other and further and different relief as this court deems just and appropriate.

Respectfully submitted this 16th day October 2013

/s/ Nathanael E. Wright
Nathanael E. Wright, Esq.
State Bar No.: 141866
210 East 31st
Savannah, GA 31419
912-238-2881
912-231-1251 FAX
nwrightlawpc@gmail.com

**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned certifies that the within and foregoing Complaint has this date been served upon counsel of record by mailing a copy of same through the United States mail, properly addressed, in an envelope bearing sufficient postage thereon, as follows:

**Robert F. Jones, General Counsel,**
**Georgia Department of Corrections,**
**300 Patrol Rd., PO Box, 1529,**
**Forsyth, GA 31029.**

This ___ day of ___________, 2013.

/s/ Nathanael E. Wright
Nathanael E. Wright
GA Bar No. 141866
Attorney for the Defendant

Nathanael E. Wright
210 East 31st
Savannah, GA 31401
Phone: (912) 238-2881